UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE RATCLIFF,

        Plaintiff,

v.

CITY OF DETROIT, et al.,

        Defendants.

Case No. 2:19-cv-13458

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER
GRANTING IN PART, DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [33]**

Plaintiff sued the City of Detroit and three Detroit police officers, Shaun Dunning, Marquise Lake, and Anthony Lewis, in their official and individual capacities and he alleged constitutional claims under 42 U.S.C. § 1983 for unlawful search and seizure, false arrest or imprisonment, malicious prosecution, and a municipal liability claim for a custom, practice, or policy resulting in constitutional violations. ECF 1, PgID 1–10. Defendants moved for summary judgment and asserted qualified immunity defenses for the federal claims. ECF 33, PgID 240. Plaintiff timely responded. ECF 36. The Court reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the reasons below, the Court will grant in part and deny in part Defendants' summary judgment motion.

**BACKGROUND**

On August 9, 2018 Plaintiff was leaving his place of employment and walked toward his vehicle that was parked on the street outside the shop, with one of his co-

1

workers. ECF 36-2, PgID 374–75. It is uncontested that Plaintiff had a gun holster with a gun on his right hip. *Id.* at 375. While Plaintiff alleges that the gun in the holster was always visible, *id.* at 384, Defendants argue that it was concealed for at least part of the relevant time frame, ECF 33, PgID 244. The security footage shows that when Plaintiff walked across the parking lot from the shop to his car, he was wearing a black, long-sleeved shirt. ECF 36-11[1] at 0:00–0:16 (video filed in traditional manner). And when Plaintiff reached his car, he removed the long-sleeved black shirt—exposing a t-shirt underneath—and slung the black shirt over his shoulder. *Id.* at 0:07–0:19. The video then shows Plaintiff walk towards the trunk of his car. *Id.* at 0:17–0:35.

Then, the video depicts a squad car pulling up, several officers jumping out and handcuffing Plaintiff without incident. *Id.* at 0:32–0:37. The video shows an officer reach immediately for Plaintiff's right hip where the gun was ultimately recovered from the holster. *Id.* at 0:40–0:42. One officer asserts now that he was able to see "something black" on Plaintiff's "right side" and that he informed his partners so they could investigate. ECF 36-4, PgID 428–29. The "close up" version of the same video is far too pixilated or blurry to provide any further clarity. ECF 36-12.

The body camera footage began when Plaintiff was surrounded by officers as they seized his gun and placed Plaintiff in handcuffs. ECF 36-13. The footage showed

---

[1] ECF 36-11 is the footage from the Superland Market's surveillance camera and the numerical references after the citation are timestamps for the video filed with the Court. Likewise, ECF 36-12 is a "close up" of the same footage. And ECF 36-13 is footage from an officer's body camera.

2

no struggle and full compliance by Plaintiff. *Id.* The sound in the video began at twenty-nine seconds and Plaintiff stated, "it was open," a reference to his carry of the gun. *Id.* at 0:29–0:30. The officer responds "no, it wasn't. Your shirt was over it, sir." *Id.* at 0:30–0:32. A second officer echoes that "it was not open definitely to the public, man." *Id.* at 0:39–0:42. Plaintiff and the officers continue to have a civil discussion about whether the gun was concealed for another two minutes. *Id.* at 0:42–2:30.

Later, Plaintiff was taken to the Detroit Detention Center and interrogated about his possession of the gun. ECF 33-8, PgID 328; ECF 36-2, PgID 376. The interrogation report notes confirm that when Plaintiff was asked if his gun was exposed or covered, Plaintiff replied "I don't know it may have been covered because I lift[ed] my arms up to take off one of my shirts, the 2nd shirt probably fell over my gun causing the gun to become conceal[ed], when I was suppose[d] to be open carry[ing]." ECF 33-8, PgID 328.

Plaintiff was charged in state court with one count of carrying a concealed weapon under Mich. Comp. Laws § 750.227. ECF 36-14, PgID 707. In December 2018, Plaintiff was acquitted of the charge, *id.*, and he then brought the present suit. ECF 1. Plaintiff does not claim to have suffered any physical injuries but alleged ongoing mental anguish based on a diagnosis with PTSD that resulted from the arrest. ECF 36-2, PgID 374.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify

specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

At summary judgment the Court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (cleaned up). This requirement may be overcome with video evidence that captures the entire event in question that "clearly contradicts the version of the story told by [the nonmoving party]." *Id.*; *see Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (finding that a video "utterly discredit[ed]" the plaintiff's version of events and allowed the district court to "ignore the 'visible fiction' in his complaint).

## DISCUSSION

Defendants moved for summary judgment and argued they were entitled to qualified immunity as to Plaintiff's Fourth Amendment claims, that Plaintiff has failed to state any valid state law claims, and that Plaintiff's *Monell* claims failed because there is no evidence of a constitutional violation. Ordinarily, the Court would address each of the claims separately in their entirety, but, in the present circumstance, granting summary judgment on two of the claims boils down to whether the video evidence clearly refutes Plaintiff's version of events. After careful review of the video evidence, the Court cannot say there is no genuine dispute of material fact regarding whether Plaintiff's gun was always visible during the incident. The grainy quality of the video footage, the angle of the camera, and the distance from which the video was captured prevents the Court from determining whether Plaintiff's holster or gun was visible. In all, the video evidence is inconclusive.

Without definitive evidence, the Court is only left to rely on the presumption it must make in summary judgment motions: that it must view the facts "in the light most favorable" to Plaintiff, the non-moving party. The Court must therefore presume that Plaintiff's gun was visible throughout the interaction because the presumption cannot be "utterly discredit[ed]" or "clearly contradict[ed]" by the video evidence. *Scott*, 550 U.S. at 379–80. With that presumption in mind, the Court will deny summary judgment on each of the illegal search and seizure claims. The Court will analyze each claim to demonstrate why a genuine dispute as to the material fact of

5

whether the gun was visible requires that outcome for those claims. The malicious prosecution claims rely on separate facts and will be analyzed subsequently.

I.    <u>Fourth Amendment Illegal Search and Seizure</u>

Under federal law, an illegal, warrantless search and seizure claim requires a plaintiff to prove that the arresting officer lacked probable cause to arrest. *Mobley v. City of Detroit*, 938 F. Supp. 2d 669, 679 (E.D. Mich. 2012) (citing *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005)). An officer has probable cause to search if there is an "objectively reasonable basis for the belief that" the individual to be arrested either has committed a crime or intends to commit a crime. *Id.* (citing *McClain*, 444 F.3d at 563). In other words, if the "facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution," to suspect that the person "has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). In certain circumstances, an eyewitness identification may be enough to establish adequate probable cause, absent an apparent reason to believe the witness was lying, inaccurate, or mistaken. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). But importantly, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)).

Here, Defendants rebuff the claim of constitutional violation but also assert that they are entitled to qualified immunity "unless on an objective basis it is obvious

6

that no reasonably competent officer would have concluded that his conduct was lawful." ECF 33, PgID 252 (citation omitted). Qualified immunity is "an immunity from suit rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). A qualified immunity analysis requires a two-pronged inquiry. First, the Court must consider whether the facts, "when taken in the light most favorable to the party asserting the injury, show the [defendant's] conduct violated a constitutional right." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). Second, the Court must determine whether the right was "clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 201–02).

The Court may use its discretion to determine which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Ultimately, "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). But "courts 'should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" *Jones v. Clark Cnty.*, 959 F.3d 748, 765 (6th Cir. 2020) (quoting *Flint ex rel. Flint v. Ky. Dept. of Corr.*, 270 F.3d 340, 346 (6th Cir. 2011)).

An instance of genuine dispute is present here. The genuine dispute regarding whether Plaintiff's gun was visible is material to the probable cause determination. And the probable cause determination is material to the Court's ability to determine whether a constitutional violation occurred. The video submitted by the parties fails to resolve this dispute. As a result, the Court cannot determine before trial whether Defendants' acts violated clearly established rights, making the grant of both summary judgment and qualified immunity improper. *Id.* Thus, the Defendants are entitled to neither summary judgment nor qualified immunity on the Fourth Amendment illegal search and seizure claim.

II. <u>Michigan State Law False Arrest and False Imprisonment</u>

Under Michigan law, a claim for false arrest or false imprisonment requires proof of the false imprisonment of a person who is innocent of the charge on which he was arrested by the defendant without legal justification. *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 232 (1982). "[F]alse arrest and false imprisonment are not separate torts, and a false arrest is one way to commit false imprisonment; since an arrest involves a restraint, it always involves imprisonment." *Id.* at 231 n.4 (quoting 32 Am. Jur. 2d, False Imprisonment, § 2, at 59–60). Unlike malicious prosecution, false arrest or imprisonment claims are proper when the aggrieved is "arrested without legal authority" but requires no showing of malice. *Id.* (emphasis omitted). An arrest is illegal when "it was not based on probable cause." *Young v. Barker*, 158 Mich. App. 709, 720 (1987).

As previously stated, there is a genuine dispute of material fact as to whether Plaintiff's gun was visible. That dispute prevents the Court from granting summary judgment on the state law claim of false arrest and false imprisonment.

III.     Fourth Amendment Malicious Prosecution, Qualified Immunity

A malicious prosecution claim requires proof that (1) a criminal prosecution was initiated against the plaintiff, and the defendants made, influenced, or participated in the decision to prosecute; (2) the government lacked probable cause;[2] (3) as a result of the legal proceeding plaintiff suffered a deprivation of liberty apart from the initial seizure, and; (4) the criminal proceeding terminated in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (citations omitted). The Sixth Circuit has previously found that when there is a judicial determination of probable cause, like when a state court judge binds an arrestee over for trial, precludes "relitigating the matter on a theory of malicious prosecution in [a] § 1983 suit." *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007). That is, the probable cause threshold is met unless the state judge's "probable-cause determination

---

[2] The probable cause showing for Fourth Amendment malicious prosecution claims differs from the probable cause showing for false arrest or imprisonment claims. Thus, although the same element may be at issue in the present case on each of the claims, the findings differ. *See Szappan v. Meder*, No. 18-12244, 2020 WL 209746, at *6 (E.D. Mich. Jan. 14, 2020) ("Probable cause for a malicious prosecution claim is different than the probable cause for a false arrest claim. A plaintiff claiming false arrest must prove there was no probable cause to arrest the plaintiff. A plaintiff raising a claim of malicious prosecution under federal law must demonstrate a lack of probable cause for the prosecution.") (citation omitted).

9

justifying one's dentition is predicated solely on a police officer's false statements." *Coffey v. Carroll*, 933 F.3d 577, 590 (6th Cir. 2019) (cleaned up).

Here, Plaintiff was bound over by a Michigan 36th District Judge for carrying a concealed weapon. ECF 36-8, PgID 502–03. Thus, the Michigan state court judge found probable cause. What is more, Plaintiff offered no evidence to suggest or imply that the officers lied or provided false statements. ECF 36, PgID 361–62. The only evidence offered to discredit the officers' decision was the security videos, and as the Court has found, the video does not credit or discredit the officers' statements. Thus, because Plaintiff cannot establish that the government lacked probable cause, he cannot establish a federal law claim for malicious prosecution under § 1983. The Court will grant Defendants' summary judgment motion as to Plaintiff's Fourth Amendment claim for malicious prosecution.

Defendants also asserted the defense of qualified immunity on the claim. Because the Court has found that no constitutional violation occurred, the officers are also entitled to qualified immunity on the claim.

IV.     Michigan State Law Malicious Prosecution

Next, Plaintiff asserted malicious prosecution under Michigan state law. A malicious prosecution claim under Michigan law requires a Plaintiff to prove four elements: "(1) a defendant began a criminal prosecution against the plaintiff, (2) the criminal proceeding terminated in the plaintiff's favor, (3) the defendant lacked probable cause to begin or maintain the prosecution, and (4) the defendant acted with malice or with a purpose other than bringing the offender to justice." *Haggart v. City*

10

*of Detroit*, 2:19-cv-13394, 2020 WL 5200961, at *2 (E.D. Mich. Sept. 1, 2020) (Murphy, J.) (citing *Matthews v. Blue Cross and Blue Shield of Mich.*, 456 Mich. 365, 378 (1998)).

As with the federal malicious prosecution claim, Plaintiff cannot meet the burden to show that the Defendants lacked probable cause to begin the prosecution. Under Michigan Court Rules, the purpose of a preliminary examination is for a state district judge "to determine whether probable cause exists to believe that an offense has been committed by the defendant." *Spencer v. Huron Cnty.*, No. 15-cv-12209, 2017 WL 345655, at *3 n.3 (E.D. Mich. Jan. 24, 2017) (citing Mich. Ct. R. 6.110). When the district court finds probable cause that a defendant committed an offense not cognizable by that court and that the defendant is the one that committed that offense, then it "*must* bind the defendant over for trial." Mich. Ct. R. 6.110(E) (emphasis added). Because Plaintiff was bound over by the 36th District Court of Michigan, that court found probable cause existed to prosecute. Thus, Plaintiff is unable to show that Defendants lacked probable cause to begin the prosecution against him and therefore the claim fails. The Court will grant summary judgment to Defendants on the Michigan malicious prosecution claim.

V.    *Monell* Claim

*Monell* liability occurs "when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [] injury." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). *Monell* claims provide an avenue for municipal liability for

11

claims brought under § 1983. But "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000)).

Here, there are two groups of underlying federal constitutional violations at stake. First, there are the Fourth Amendment claims for illegal search and seizure. Because there is a genuine dispute of material fact regarding whether a constitutional violation occurred under the claim, the Court must also deny summary judgment on the *Monell* claim as to the claim.[3] The second group is the federal malicious prosecution claim. The Court granted summary judgment on the claim because no constitutional violation occurred. Without a constitutional violation, there can be no *Monell* claim as to the alleged malicious prosecution claim. The Court will therefore grant summary judgment on the *Monell* claim as to the malicious prosecution claim.

## CASE MANAGEMENT

The only remaining claims are the Fourth Amendment illegal search and seizure claim, its underlying *Monell* claim, and the state law false arrest and false imprisonment claim. Because the case has been pending for almost two years and due to the ongoing delay in all in-person jury trials in the Eastern District of Michigan due to COVID-19, *see* 20-AO-038 (REVISED), 21-AO-006, the Court believes the

---

[3] The Court notes that summary judgment is further not warranted regarding the *Monell* claim for illegal search. Defendants papered over the failure to train issue on Michigan concealed carry laws raised by Plaintiff, ECF 33, PgID 261, and Plaintiff still responded and offered numerous reasons of how this training never occurred, ECF 36, PgID 366. Defendants failed to respond to this argument.

12

parties will benefit from mediation. The Court will therefore refer the case to mediation with Mr. Patrick Seyferth. The mediation must occur no later than September 30, 2021.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [33] is **DENIED** as to the Fourth Amendment illegal search and seizure claim and the Michigan state law false arrest and imprisonment claim.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment [33] is **GRANTED** as to the state and federal malicious prosecution claims.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment [33] is **GRANTED IN PART** and **DENIED IN PART** regarding the *Monell* claim.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. Patrick Seyferth[4] for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions shall occur no later than **September 30, 2021**. The parties shall contact Mr. Seyferth and provide him with a copy of this order as soon as practicable and shall **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Seyferth shall **NOTIFY** the Court within seven days of completion of the mediation, stating only the "date of completion, who participated, whether settlement was reached, and whether further [alternative

---

[4] Patrick Seyferth is a private attorney and founding member of the firm Bush Seyferth, PLLC. He can be reached at (248) 822-7802 and at Seyferth@bsplaw.com.

dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties shall **NOTIFY** the Court immediately upon completion of the mediation and shall **SUBMIT** a proposed order of dismissal within 21 days. *Id.* at 16.4(e)(7). If a settlement is not reached, the parties shall **NOTIFY** the Court within seven days of the completion of the mediation.

**IT IS FURTHER ORDERED** that if the parties are unable to resolve the case with Mr. Seyferth's assistance, they must **SUBMIT** a joint status report, no later than **seven days** after the mediation, informing the Court if they will consent to a bench trial.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 19, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 19, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager